UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


CAMERON LEE FITTS,

         Plaintiff,                  CIVIL ACTION NO. 05-73112

        v.                      DISTRICT JUDGE PAUL D. BORMAN

SHERRY BURT, KENNETH          MAGISTRATE JUDGE VIRGINIA M. MORGAN
MACEACHERN, JOHN OCWEIJA,
CAROL VALLIE, RICHARD CADY,
HEATHER CARTER, TOM MCFARLAND,
STEVE KAHLER, DEPUTY WARDEN
PALMER, CORRECTIONAL MEDICAL
SERVICES INC., CRAIG HUTCHINSON,
THOMAS BIRKETT, BARBARA MEAGHER,
PATRICIA L. CARUSO, GERALD HOFBAUER,
ROBERT NAPEL, JAMES TRETHEWAY,
KATHERINE AALTO, JAMES ALEXANDER,
DENNIS GRIM, PHIL JOHNS, and
JAMES MACMEEKIN,

         Defendants.
_____/


**REPORT AND RECOMMENDATION**


**I.  Introduction**

      This matter comes before the court on defendants Aalto, Alexander, Johns, Hofbauer,

Napel, Burt, Ocweija, Vallie, Cady, Carter, McFarland, Kahler, Palmer, Birkett, Meagher,

Caruso, MacEachern, and MacMeekin's Motion to Sever, to Dismiss, and for Summary

Judgment (D/E # 74).  For the reasons stated below, the court recommends that defendants'

motion to sever be **GRANTED** and that MacEachern, Tretheway, Grim, Napel, MacMeekin, Johns, Hofbauer, Aalto, and Alexander be severed from this action and transferred to the United States District Court for the Western District of Michigan.

This Court also recommends that defendants' motion to dismiss and/or for summary judgment be **GRANTED IN PART** and **DENIED IN PART**. It is recommended that Caruso, McFarland, Palmer and Kahler be granted summary judgment on all claims against them and that they be dismissed from this action. It is also recommended that Birkett be granted summary judgment as to the deliberate indifference claim against him. The deliberate indifference claim against Burt, Ocweija, Vallie, Cady and Carter, the First Amendment claim against Birkett and Meagher, and the deliberate indifference claim against Meagher should be allowed to proceed.

## II. Background

Plaintiff is an inmate in the custody of the Michigan Department of Corrections (MDOC). On August 12, 2005, he filed suit pursuant to 42 U.S.C. § 1983 against MDOC Director Patricia Caruso, Correctional Medical Services (CMS), and twenty other MDOC and CMS officials, alleging that they were deliberately indifferent to his medical needs, that his personal property was taken in retaliation for his filing of various complaints and grievances, that defendants violated his right to equal protection of the law, that he was subjected to cruel and unusual punishment, and that various other constitutional wrongs were visited upon him (D/E # 1).

Plaintiff failed to list his claims in separate counts and, instead, he made numerous allegations over nine different paragraphs. In paragraph one of the complaint, plaintiff alleged

that, while plaintiff was released to general population from administrative segregation by Burt, Ocweija, Vallie, Cady, and Carter on January 7, 2004; on January 8, 2004, defendants returned him to administrative segregation without reason. According to plaintiff, that action constituted deliberate indifference to plaintiff's medical needs because plaintiff had been sent to the Southeastern Michigan Correctional Facility in Jackson, Michigan (JMF) to see Dr. Hutchinson and defendants later sent plaintiff back to Marquette without letting plaintiff see Hutchinson. Plaintiff further alleged that Cady and Carter called him a "nigger" and later said they were sending plaintiff back to the Marquette Branch Prison (MBP) regardless of how plaintiff felt.

In paragraph two, plaintiff alleged that, on November 22, 2004, Hutchinson, CMS, and Caruso denied plaintiff Hepatitis C treatment because of a lack of funds. "Defendant" refused a referral to a specialist at DWH for liver disease Hepatitis C and defendants also agreed to refuse to give plaintiff his needed medications and diet.

In paragraph three, plaintiff alleged that, on November 22, 2004, Hutchinson denied surgery on plaintiff's left ankle, which was broken in three different places, even though surgery was recommended by orthopedic specialist Dr. Richard Granholm. According to plaintiff, that denial constituted deliberate indifference to plaintiff's serious medical needs as plaintiff has been in pain and is suffering.

In paragraph four, plaintiff alleged that, on November 13, 1997, McFarland, on orders of Kahler and Palmer, went into plaintiff's cell at JMF and retaliated against plaintiff for the filing of grievances and complaints by taking plaintiff's property.

In paragraph five, plaintiff alleged that, while plaintiff was sent to the Standish Maximum Facility (SMF) to take part in the SSOPT program for mental health treatment in May, 2004, Birkett and Meagher used retaliation, discrimination, false misleading information, and racial discrimination to deny plaintiff his mental health treatment. According to plaintiff, the retaliation was because of a prior lawsuit plaintiff filed against Birkett. Plaintiff also alleged that, in 2003, Birkett and Meagher retaliated against plaintiff by denying him his religious diet of kosher meals without reason, notice or misconduct, and by transferring plaintiff back to MBP.

In paragraph six, plaintiff alleged that, on February 15, 2005, MacEachern denied plaintiff services for his mental health needs, even though the treatment had been approved earlier, by denying plaintiff's transfer and allowing a white inmate to be transferred in plaintiff's place.

In paragraph seven, plaintiff alleged that, on August 4, 2003, Tretheway, Grim, and Napel wrongfully sent plaintiff back to administrative segregation just three days after plaintiff had been released from it. According to plaintiff, Napel ordered the return to administrative segregation because he did not trust plaintiff and if plaintiff did something wrong it would have been on MacMeekin. Plaintiff also alleged that, on August 6, 2003, Napels, Aalto, Tretheway, and Grim, told Johns to type up a false misleading report to MacMeekin, and to not tell MacMeekin that plaintiff was released for a few days or that plaintiff did not need "RPA" approval for release.

In paragraph eight, plaintiff alleged that Caruso, MacMeekin, Armstrong, MacEachern, and Alexander knew that plaintiff was wrongfully being held in administrative segregation and

they failed to act. According to plaintiff, that failure to act constituted racial discrimination, cruel and unusual punishment, denial of due process, and denial of equal protection. Plaintiff also alleged that he has been telling Caruso, Armstrong, MacMeekin, Alexander, Hofbauer, Napel, Tretheway, Aalto, Grim, and Johns about his illegal confinement since August 4, 2005.

In paragraph nine, plaintiff alleged that, while psychiatrists sent plaintiff for mental health treatment on June 10, 2005, Johns, Hofbauer, and Napel conspired together to deny the transfer on June 12 or 13, 2005. According to plaintiff, that action constituted retaliation and deliberate indifference.

On April 27, 2006, this Court issued a Report and Recommendation finding that plaintiff's complaint should be dismissed for a failure to establish the exhaustion of administrative remedies (D/E # 52). On June 26, 2006, United States District Judge Paul D. Borman issued an order adopting this Court's Report and Recommendation (D/E # 57). Judge Borman also issued judgment in favor of defendants (D/E # 58). Plaintiff appealed the judgment against him and, on April 23, 2007, the Sixth Circuit vacated the judgment and remanded this case for further proceedings consistent with <u>Jones v. Bock</u>, __ U.S. __, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007) (D/E # 63).

On July 20, 2007, defendants named above filed the pending motion to sever, to dismiss, and for summary judgment (D/E # 74). In that motion, defendants noted that plaintiff's complaint encompasses an eight-year time span and at least thirteen separate acts. Defendants also noted that the defendants named in paragraphs six through nine of plaintiff's complaint: MacEachern, Tretheway, Grim, Napel, MacMeekin, Johns, Hofbauer, Aalto, and Alexander

reside in the Western District of Michigan and the claims against them arose there. Defendants further noted that the claims against the Western District defendants did not arise out of the same transaction or transactions that the claims against the Eastern District defendants arose out of. Given those facts, defendants argued that all claims found in paragraphs six through nine should be severed from this lawsuit on the basis of improper venue.

Defendants also argued that plaintiff failed to properly exhaust his claims, that he was unconstitutionally confined in administrative segregation while housed at JMF, and that he was not transferred in February 2005 due to racial discrimination. Given the failure to exhaust those claims, defendants argued that they should be dismissed. Defendants further argued that plaintiff failed to demonstrate that Caruso had any personal involvement in the actions making up the basis of the complaint and, consequently, Caruso would be entitled to summary judgment on the claims against him. Defendants next argued that plaintiff failed to demonstrate all elements of his Eighth Amendment deliberate indifference claim and First Amendment claim against Birkett and Meagher, and that those defendants are therefore entitled to summary judgment. Lastly, defendants argued that plaintiff's claim that alleged retaliation through the seizing of property arose from events that occurred in 1997 is therefore barred under the applicable statute of limitations.

On August 15, 2007, plaintiff filed a response to defendants' motion to sever, to dismiss, and for summary judgment (D/E # 77). Plaintiff argued that he has met all the necessary requirements to join all the parties in this action and that his claims against the different defendants are related because he was sent to a correctional facility in the Western District of

Michigan as a result of his previous grievances and lawsuits. Plaintiff also argued that he only failed to exhaust his administrative remedies because of obstruction by MDOC staff. Plaintiff further argued, after noting that he is proceeding *pro se*, that he stated a claim against Caruso for Caruso's laissez-faire attitude toward constitutional rights, which emboldened other defendants to violate plaintiff's rights, and for her ignoring of the warning signs of those violations. Plaintiff also argued that there is a genuine issue of material fact with regard to his claims against Birkett and Meagher, as their affidavits squarely contradict plaintiff's allegations. Lastly, plaintiff argued that the statute of limitations cited to by defendants does not apply to his loss of property claim because he had assumed that the property claim was included in the settlement of a prior action, but it was not and plaintiff had to seek relief on his own.

**III. Discussion**

**A. Motion to Sever**

Defendants MacEachern, Napel, MacMeekin, Johns, Hofbauer, Aalto, and Alexander move to sever the claims against them from this case because the claims against them should not have been joined with the claims against defendants Burt, Ocweija, Vallie, Cady, Carter, Caruso, Hutchinson, CMS, McFarland, Kahler, Palmer, Birkett, and Meagher. Pursuant to Fed. R. Civ. Pro. 20(a), plaintiff may join all defendants in one action "if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action." If parties have been misjoined, the court

should not dismiss the entire action and may, instead of dismissal, sever the claims and allow them to proceed separately.  Fed. R. Civ. P. 21.

In this case, plaintiff has alleged claims against twenty-two different defendants over nine separate paragraphs of his complaint and the claims arise from plaintiff's time in several different correctional facilities over a number of years.  However, despite the breadth of plaintiff's complaint, the claims proceed along two clear lines and are easily divisible, with one exception.  In plaintiff's complaint, paragraphs one through five allege claims against defendants who reside in the Eastern District:  Burt, Ocweija, Vallie, Cady, Carter, Caruso, Hutchinson, CMS, McFarland, Kahler, Palmer, Birkett, and Meagher.  In paragraphs six through nine, plaintiff alleges claims against defendants who reside in the Western District:  MacEachern, Tretheway, Grim, Napel, MacMeekin, Johns, Hofbauer, Aalto, and Alexander.  The one exception is found in paragraph eight, where plaintiff also alleges a claim against Caruso.[1] However, as discussed below, the claims against Caruso should be dismissed and, consequently, should have no bearing on the motion to sever.

As argued by defendants, the claims in paragraphs six through nine did not arise from the same "transaction, occurrence or series of transactions or occurrences" as required by Fed. R. Civ. P. 20(a) and the defendants named in those paragraphs should be severed from this action. After Caruso is dismissed from this case, the claims in paragraphs six through nine are against different defendants and they arose out of actions taken at a different correctional facility than the claims in paragraphs one through five.  Plaintiff argues that the claims are related merely

---

[1]Where each defendant resides and where the claims arose is undisputed.

because he was transferred to a different correctional facility because of retaliation, but that argument is unpersuasive as the actual actions taken by the defendants at the different correctional facilities are not alleged to have anything to do with each other whatsoever. Therefore, because the claims in paragraphs six through nine did not arise from the same transactions or occurrences, permissive joinder is inappropriate and the Court should sever the claims for misjoinder under Fed. R. Civ. P. 21.

### C.  Motion for Change of Venue

In the event they are severed, defendants MacEachern, Napel, MacMeekin, Johns, Hofbauer, Aalto, and Alexander move to transfer this case to the United States District Court for the Western District of Michigan.  Title 28 U.S.C. § 1404(a) provides: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  Under § 1404(a), "a district court 'has broad discretion to grant or deny [a] motion to transfer a case.'"  Phelps v. McClellan, 30 F.3d 658, 663 (6th Cir.1994), quoting Cote v. Wadel, 796 F.2d 981, 985 (7th Cir. 1986).  The moving party bears the burden of showing, by a preponderance of the evidence, that a change of venue is warranted.  Amphion, Inc. v. Buckeye Elec. Co., 285 F.Supp.2d 943, 946 (E.D. Mich.2003).

"To transfer an action under section 1404(a) the following criteria must be met: (1) the action could have been brought in the transferee district court; (2) a transfer serves the interest of justice; and (3) a transfer is in the convenience of the witnesses and parties."  Kepler v. ITT Sheraton Corp., 860 F.Supp. 393, 398 (E.D.Mich.1994) (Gadola, J.).  As an initial matter, the

court finds that this case could have been brought in Western District of Michigan. Defendants are Michigan citizens and a substantial portion of the events giving rise to the claims against them occurred in the Western District. See 28 U.S.C. § 1391(a). The court therefore considers whether the transfer serves the interest of justice and the convenience of the witnesses and parties. Kepler, 860 F.Supp. at 398.

To determine whether a motion to transfer venue pursuant to § 1404(a) should be granted, this Court must weigh a number of case-specific factors, including the following: (1) the convenience of the parties, (2) the convenience of the witnesses, (3) accessibility to sources of proof, (4) the availability of process to compel attendance of unwilling witnesses, (5) the costs of obtaining willing witnesses, (6) the practical problems of trying the case most expeditiously and inexpensively, and (7) the interests of justice. Kepler, 860 F.Supp. at 398.

Regarding the first factor, it is well-established that a plaintiff's choice of forum is given substantial deference, Thomas v. Home Depot, U.S.A., Inc., 131 F.Supp.2d 934, 937 (E.D. Mich.2001) (Gadola, J.), and "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." Stewart v. Dow Chemical Co., 865 F.2d 103, 106 (6th Cir. 1989) (quoting Gulf Oil Co. v. Gilbert, 330 U.S. 501, 508-08, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947)). Nevertheless, in this case, the convenience of the parties supports the transfer as plaintiff and all defendants named in paragraphs six through nine of the complaint reside in the Western District. Moreover, while plaintiff did choose to file in the Eastern District, it is not clear he would wish to stay here with respect to the claims against the Western District defendants if those claims are severed.

-10-

With respect to the second factor, it has been held that "[w]itnesses' convenience is one of the most important factors in determining whether to grant a motion to change venue under § 1404(a)." Thomas, 131 F.Supp.2d at 937. The court in Thomas further explained:

> In weighing the convenience of the witnesses, more important than raw numbers of witnesses living in a particular jurisdiction is the residence of the key witness or witnesses. One chief witness's convenience, in fact, may outweigh the convenience of the other, less significant witnesses. This is why the parties should provide each witness's name and an outline of what material testimony that witness would provide. Only when the Court is armed with such information can it properly assess the convenience of the witnesses. [Thomas, 131 F.Supp.2d at 937.]

In this case, neither party has provided the names of witnesses or an outline of what material testimony each witness will provide, so the Court is not able to properly assess the convenience of witnesses. However, it is undisputed that the actions providing the basis for the claims in paragraphs six through nine of the complaint all took place at correctional facilities in the Western District and, therefore, it is likely that most of the material witnesses reside there.

Similarly, neither brief discusses any of the other factors mentioned by the court in Kepler; accessibility to sources of proof, the availability of process to compel attendance of unwilling witnesses, the costs of obtaining willing witnesses, the practical problems of trying the case most expeditiously and inexpensively, or the interests of justice. Kepler, 860 F.Supp. at 398. Once again, however, it is more likely that, given where the claims arose, that each factor supports a transfer.

As noted above, the burden is on defendants to show, by a preponderance of the evidence, that a change of venue is warranted. Amphion, 285 F.Supp.2d at 946. In this case,

defendants rely solely on that fact that the claims arose and all parties reside in Western District. Plaintiff makes no argument with regard to venue. This Court finds that, while there is little argument with respect to some of the relevant factors, defendants have met their burden of showing that a change in venue is warranted given where the claims arose, the location of the parties, and the probable location of witnesses and sources of proof.[2]

### C.  Motion for Summary Judgment[3]

### 1.  Standard of Review

Burt, Ocweija, Vallie, Cady, Carter, Caruso, Birkett, Meagher, McFarland, Palmer and Kahler move for summary judgment pursuant to Federal Rule of Civil Procedure 56(b), which states that "[a] party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move without or without supporting affidavits

---

[2]Tretheway and Grim have not been served in this matter (D/E # 17, 18) nor have they joined in the motion to sever and transfer.   However, this Court recommends that the claims against them, to the extent they remain part of this case, be severed and transferred for the same reasons discussed above.

[3]Defendants originally framed their argument regarding plaintiff's alleged failure to exhaust his administrative remedies as a motion to dismiss pursuant to Fed. R. Civ. Pro. 12(b)(6).  However, plaintiff improperly relied on outside affidavits in support of their motion. The court may consider evidence outside the complaint and, in doing so it converts the motion to dismiss to a motion for summary judgment.  Fed. R. Civ. P. 12(b)(6).  If the district court chooses to treat the motion as one for summary judgment, it should give the parties a reasonable opportunity to present all material made pertinent to such a motion by Fed. R. Civ. Pro. 56. Kostrzewa v. City of Troy, 247 F.3d 633, 643-644 (6th Cir. 2001).  In this case, both defendants and plaintiff submitted evidence from outside the pleadings and, therefore, it appears they have had their opportunity to submit evidence and the district court may convert the motion to dismiss into a motion for summary judgment.  Moreover, this Report and Recommendation can also serve as notice of the intent to convert the motion to dismiss pursuant to Fed. R. Civ. Pro. 12(b)(6) into a motion for summary judgment.

for a summary judgment in the party's favor as to all or any part thereof."  Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-movant.  See Matsushita Electric Industrial Co., Ltd. et al. v. Zenith Radio Corp., et. al., 475 U.S. 547, 587, 106 S.Ct. 1348, 1356 (1986); see also B.F. Goodrich Co. v. U.S. Filter Corp., 245 F.3d 587, 591-92 (6th Cir. 2001).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  Once the moving party has carried his burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial."  Matsushita, 475 U.S. at 587, 106 S.Ct. 1348.  The opposing party cannot merely rest upon the allegations contained in his pleadings.  Rather, he must submit evidence demonstrating that material issues of fact exist. Banks v. Wolfe County Bd. of Educ., 330 F.3d 888, 892 (6th Cir. 2003); Fed. R. Civ. P. 56(e). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587, quoting First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 1575, 1592 (1968)).

### 2. Exhaustion of Administrative Remedies

Pursuant to the Prison Litigation Reform Act of 1995 (PLRA), 110 Stat. 1321-71, as amended 42 U.S.C. §§ 1997e *et seq.*, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in

any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Accordingly, exhaustion of available administrative remedies is mandatory in order for prisoners to bring a claim in federal court. Jones v. Bock, __ U.S. __, __, 127 S.Ct. 910, 914, 166 L.Ed.2d 798 (2007); Woodford v. Ngo, __ U.S. __, __, 126 S.Ct. 2378, 2383, 165 L.Ed.2d 368 (2006). Not only must the prisoner exhaust all available remedies but such exhaustion must be proper, including "compliance with an agency's deadlines and other critical procedural rules." Woodford, 126 S.Ct. at 2386 (holding that an inmate's exhaustion must be in compliance with applicable grievance procedures, specifically deadlines, because "no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings"). The Supreme Court defines proper exhaustion as "using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." Woodford, 126 S.Ct. at 2385, quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir.2002) (emphasis in original).

In this case, Burt, Ocweija, Vallie, Cady and Carter argue that plaintiff failed to properly exhaust the claims against them found in paragraph one of plaintiff's complaint regarding his alleged unconstitutional confinement in administrative segregation in January 2004. MacEachern also argues that plaintiff failed to exhaust the claim found in paragraph six that he denied plaintiff a transfer because of racial discrimination.[4] Defendants support their argument with an affidavit from Jim Armstrong, the Manager of the Prisoner Grievance and Appeals

---

[4]With respect to MacEachern, this issue is moot if the motions to sever and to transfer are granted.

Section of MDOC (attached as Exhibit A to Defendants' Motions). In that affidavit, Armstrong states that "there were no Step III grievances filed by [plaintiff] during January 2004 regarding illegal housing of [plaintiff] in administrative segregation involving Defendants Sherry Burt, John Ocweija, Carol Vallie, Richard Cady, or Heather Carter." (Exhibit A to Defendants' Motions, ¶ 16) Armstrong also stated that a "review of our files also indicates there were no Step III grievances filed by [plaintiff] regarding being denied a transfer out of Marquette Branch Prison and denial of mental health services due to racial discrimination on February 15, 2005). (Exhibit A to Defendants' Motions, ¶ 16)

In his response to defendants' motion, plaintiff asserts that he filed Step III grievances with regard to both of those grievances, but that the grievances were stolen by prison officials at Ionia Maximum Correctional Facility. Plaintiff supports his response with an affidavit attached to his complaint. In his affidavit, plaintiff states that "I filed several grievances directly to step III as to my continued confinement to Administrative-Segregation" and that "[t]he defendants stole my grievances them (sic) to hinder his (sic) access to the courts." (Plaintiff's Affidavit, ¶¶ 2).

With respect to the claim found in paragraph one, there is a genuine issue as to a material fact, whether plaintiff exhausted his administrative remedies, and Burt, Ocweija, Vallie, Cady and Carter are therefore not entitled to summary judgment pursuant to Fed. R. Civ. P. 56(b). As a preliminary matter, by stating that he appealed directly to Step III, plaintiff appears to concede that he failed to properly exhaust his administrative remedies. See Woodford, 126 S.Ct. at 2386 (holding that an inmate's exhaustion must be in compliance with applicable grievance

procedures, specifically deadlines, because "no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings").  However, by asserting that defendants' misconduct caused him to appeal directly to Step III, plaintiff may avoid the proper exhaustion requirement.  See Jones v. Smith, 266 F.3d 399, 400 (6th Cir. 2001) (holding that a plaintiff could only be deemed to have exhausted his administrative remedies where no grievance was filed because of misconduct by prison officials if the plaintiff alleged that there was no other source for obtaining a grievance form, that he made any other attempt to obtain a form, or that he attempted to file a grievance without a form).

In this case, both defendants and plaintiff provided affidavits supporting their respective positions.  Given that this Court must view the evidence and draw all reasonable inferences in favor of plaintiff, B.F. Goodrich Co., 245 F.3d at 591-92, plaintiff's affidavit creates a genuine issue as to whether plaintiff exhausted his administrative remedies.  Plaintiff's affidavit is also supported by the fact that he provided over a hundred pages of documents relating to grievances he did file, which indicate his familiarity with and willingness to use the grievance process.  Moreover, in one of those grievances, Grievance MBP 03 102502 220B (attached as part of Exhibit A to plaintiff's response), plaintiff did challenge his alleged unconstitutional confinement in administrative segregation during September 2003 and the review of that grievance lasted until at least November 2003.  While that grievance covered an earlier period than the claim in plaintiff's complaint, which alleged unconstitutional confinement in administrative segregation in January 2004, it is appears to essentially cover the same issues.  Moreover, when plaintiff filed subsequent grievances regarding his alleged unconstitutional

confinement in administrative segregation in May 2004, MBP 04 05 1213 220A (attached as part of Exhibit A to plaintiff's response), and April 2005, MBP 05 04 849 220B (attached as part of Exhibit A to plaintiff's response), the segregation placement continued to be upheld.

As evidenced by the fact that plaintiff's grievances regarding his alleged unconstitutional confinement in administrative segregation were decided on their merits at least three times, plaintiff should be deemed to have exhausted his administrative remedies. To the extent defendants argue that the grievance procedure failed to provide them with notice of plaintiff's claim, the Sixth Circuit has noted that, while the grievance procedure may promote early notice to those who might later be sued, that has not been thought to be one of the leading purposes of the exhaustion requirement. Jones, 127 S.Ct. at 923, citing Johnson v. Johnson, 385 F.3d 503, 522 (5th Cir. 2006) ("We are mindful that the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation"). The Sixth Circuit has identified the benefits of exhaustion to include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." Jones, 127 S.Ct. at 923.

With respect to the claim against MacEachern, assuming the claim against him is not severed and transferred, he is entitled to summary judgment on the claim that he refused to transfer plaintiff out of racial discrimination. While plaintiff's affidavit states that he filed grievances as to his other claims, he makes no mention of the claim involving MacEachern. In

contrast, defendants provided an affidavit stating that there was no such grievance in the prison files, and the grievances attached to plaintiff's response contains no such grievance at any step of the process.

## B. Claims against Caruso, Birkett, and Meagher

Defendants argue that they are entitled to summary judgment on the grounds of qualified immunity. Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Saucier v. Katz, 533 U.S. 194, 200; 121 S.Ct. 2151; 150 L.Ed.2d 272 (2001), quoting Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). The privilege is an immunity from suit and not a mere defense to liability. Saucier, 533 U.S. at 200. As a result, courts have "repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam).

To state a viable § 1983 claim, a plaintiff must allege that: (1) he was deprived of a right, privilege or immunity secured by the Federal Constitution or the laws of the United States; and (2) the deprivation was caused by a person while acting under color of state law. Doe v. Wigginton, 21 F.3d 733, 738 (6th Cir. 1994).

Thus, with regard to §1983 claims, a court required to rule upon the qualified immunity issue must first consider whether the facts alleged show the officer's conduct violated a constitutional right. Saucier, 533 U.S. at 201. If a violation could be shown, the court must then ask whether that constitutional right was clearly established. "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition;

and it too serves to advance understanding of the law and to allow officers to avoid the burden of trial if qualified immunity is applicable." <u>Saucier</u>, 533 U.S. at 201.

### a. Caruso - Denial of Medical Care and Illegal Administrative Segregation

As discussed above, plaintiff mentioned Caruso in two different claims; the claim that plaintiff was denied Hepatitis C treatment because of a lack of funds and the claim that Caruso, among others, knew that plaintiff was illegally being held in administrative segregation and he failed to act.

Caruso, the Director of MDOC, argues that plaintiff merely alleges claims against her on the basis of her role in supervising MDOC employees. "There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." and "[a]t a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." <u>Petty v. County of Franklin, Ohio</u>, 478 F.3d 341, 349 (6th Cir. 2007), quoting <u>Taylor v. Michigan Dep't of Corrs.</u>, 69 F.3d 76, 81 (6th Cir.1995) (emphasis omitted), quoting <u>Bellamy v. Bradley</u>, 729 F.2d 416, 421 (6th Cir.1984); <u>see</u> <u>also</u> <u>Hafer v. Melo</u>, 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991) (stating that to establish personal liability of a government official under § 1983, a plaintiff must show that the official caused the deprivation of a federal right). Thus, plaintiff must meet the causation requirements laid out in the above cases and Caruso's § 1983 liability must be based on more than respondeat superior, or the right to control employees. <u>Shehee v. Luttrell</u>, 199 F.3d 295, 300 (6th Cir.1999), <u>cert</u>. <u>denied</u>, 530 U.S. 1264, 120 S.Ct. 2724, 147 L.Ed.2d 988 (2000).

Moreover, a supervisor's failure to remedy alleged retaliatory behavior or to intervene on a plaintiff's behalf is neither a constitutional violation nor a violation of a clearly established right absent allegations that the supervisor directly participated, encouraged, authorized or acquiesced in the alleged actions. Shehee, 199 F.3d at 300. Liability under § 1983 must be based on active unconstitutional behavior and cannot be based upon "a mere failure to act." Salehpour v. University of Tennessee, 159 F.3d 199, 206 (6th Cir. 1998), cert. denied, 526 U.S. 1115, 119 S.Ct. 1763, 143 L.Ed.2d 793 (1999), even where the supervisor was aware of an actionable wrong committed by a subordinate and failed to take corrective action. Poe v. Haydon, 853 F.2d 418, 429 (6th Cir. 1988). Moreover, "[a] supervisory official's failure to control, or train the offending individual is not actionable, unless the supervisor 'either encouraged the specific incident or in some other way directly participated in it.'" Haydon, 853 F.2d at 429, quoting Hays v. Jefferson County, 668 F.2d 869, 874 (6th Cir. 1982).

In this case, while defendants incorrectly claim that Caruso is only mentioned in paragraph two of plaintiff's claims when she is actually mentioned in paragraphs two and eight, defendants correctly argue that Caruso is entitled to summary judgment because she was not personally involved in the alleged unconstitutional actions.

With respect to the denial of medical care claim, plaintiff argues that, even if Caruso did not have actual knowledge of the actors who actually committed the alleged violations, her laissez-faire attitude emboldened others, and, while she "must have known" about the sorry status of health care within MDOC and she still failed to act (plaintiff's response, pp. 12-13). However, as discussed above, a § 1983 plaintiff must show at a minimum that a supervisory

official at least "implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate."  Petty, 478 F.3d at 349, and merely alleging that Caruso's laissez-faire attitude emboldened others is insufficient for purposes of plaintiff's claims.  Furthermore, even if Caruso knew of the alleged generally poor status of health care within MDOC, liability under § 1983 must be based on active unconstitutional behavior and cannot be based upon "a mere failure to act."  Salehpour, 159 F.3d at 206.

With respect to the illegal confinement in administrative segregation claim, plaintiff makes no argument in his response and it is clear from his complaint that he merely alleges that Caruso failed to act after being informed about the alleged unconstitutional action.  Despite plaintiff's arguments, liability under § 1983 must be based on active unconstitutional behavior and cannot be based upon "a mere failure to act", even where a supervisor was aware of an actionable wrong committed by a subordinate and failed to take corrective action.  Salehpour, 159 F.3d at 206; Haydon, 853 F.2d at 429.  Thus, Caruso's motion should be granted.

**b.  Birkett and Meagher - Denial of Medical Care and First Amendment Violation**

As discussed above, plaintiff makes two claims against Birkett and Meagher.  First plaintiff alleges that Birkett and Meagher used retaliation, discrimination, false misleading information, and racial discrimination to deny plaintiff his mental health treatment.  Plaintiff also alleges that Birkett and Meagher retaliated against plaintiff by denying him his religious diet of kosher meals without reason, notice, or any misconduct on plaintiff's part.

A prisoner's claim that his constitutional right to medical treatment was violated is analyzed under the Eighth Amendment.  See Estelle v. Gamble, 429 U.S. 97, 103-104, 97 S.Ct.

285, 50 L.Ed.2d 251 (1976).  To state a § 1983 claim for a violation of a prisoner's Eighth

Amendment rights due to inadequate medical care, the prisoner must allege facts evidencing a

deliberate indifference to serious medical needs.  Wilson v. Seiter, 501 U.S. 294, 297, 111 S.Ct.

2321, 115 L.Ed.2d 271 (1991).  To succeed on a claim of deliberate indifference, plaintiff must

satisfy two elements, an objective one and a subjective one.  Wilson, 501 U.S. at 300.  The

objective element is satisfied by a showing that plaintiff had a serious medical need.  Wilson,

501 U.S. at 297.  "'Where the seriousness of a prisoner's need[ ] for medical care is obvious

even to a lay person,' this obviousness is itself sufficient to satisfy the objective component of

the adequate medical care test."  Johnson v. Karnes, 398 F.3d 868, 874 (6th Cir. 2005), quoting

Blackmore v. Kalamazoo County, 390 F.3d 890, 899 (6th Cir. 2004).  However if the need

involves minor needs or non-obvious complaints of a serious need for medical care, the plaintiff

"'must place verifying medical evidence in the record to establish the detrimental effect of the

delay in medical treatment.'"  Johnson, 398 F.3d at 874, quoting Napier v. Madison County,

Kentucky, 238 F.3d 739, 742 (6th Cir. 2001).  To satisfy the subjective component of the

adequate medical care test, the plaintiff must demonstrate that the defendant "subjectively

perceived a risk of harm and then disregarded it."  Farmer v. Brennan, 511 U.S. 825 (1994);

Comstock v. McCrary, 273 F.3d 693, 703 (6th Cir. 2001).

Deliberate indifference is characterized by obduracy and wantonness, not inadvertence or

good faith error.  Gibson v. Foltz, 963 F.2d 851, 853 (6th Cir. 1992).  Moreover, where the

prisoner has received some medical attention and the dispute is over the adequacy of the

treatment, courts are reluctant to second guess medical judgments, Westlake v. Lucas, 537 F.2d

857, 860 n. 5 (6th Cir. 1976), and deliberate indifference does not include negligence in diagnosing a medical condition.  Sanderfer v. Nichols, 62 F.3d 151, 154 (6th Cir. 1995) (citations omitted).  However, it is not necessary for a plaintiff to "show that the official acted 'for the very purpose of causing harm or with knowledge that harm will result.'"  Comstock, 273 F.3d at 703, quoting Farmer, 511 U.S. at 835.  Put simply, "deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk."  Comstock, 273 F.3d at 703, quoting Farmer, 511 U.S. at 835

      With respect to plaintiff's deliberate indifference claim, both Birkett and Meagher provided affidavits in support of their motion for summary judgment.  According to Birkett's affidavit (attached as Exhibit C to defendants' motions), he was not involved in the selection process for the mental health program.  According to Meagher's affidavit (attached as Exhibit D to defendants' motions), plaintiff refused to participate in the program.  In his response, plaintiff argues that defendants' affidavits squarely contradict the allegations made by plaintiff and, consequently, there is a genuine issue of fact in dispute.  Plaintiff also provided an affidavit stating "[a]s regards my claims that I was denied mental health treatment (SSOP) while at SMF. I did not refuse to participate.  Rather, it was claimed that I had long-term sanctions and that I had a serious assault, but of which (sic) were untrue.  The story of these plaintiffs has changed now that a lawsuit has been commenced."  (Plaintiff's Affidavit, ¶ 5).  While he does not reference them in his response, plaintiff also attached two letters from MDOC officials denying his placement in the RTP, SSRPT or SSOPT (December 13, 2004 letter and March 28, 2005 letter, attached as part of Exhibit A to plaintiff's response).

As discussed above, plaintiff has a burden of coming "forward with specific facts showing that there is a genuine issue for trial." Matsushita, 475 U.S. at 587. Plaintiff has failed to meet his burden with respect to his deliberate indifference claim against Birkett. Birkett's affidavit claims a lack of personal involvement. In his response, plaintiff merely states that it is laughable to suggest that Birkett, as warden, was not involved in the decision. However, that unsupported allegation is insufficient to demonstrate a genuine issue of material fact and Birkett is entitled to summary judgment.

Against Meagher, however, plaintiff has demonstrated that a genuine issue of material fact existed. Meagher's and plaintiff's affidavits conflict on whether plaintiff requested to be in any mental health program and plaintiff also provided letters rejecting his admittance to any such program. Given that this Court must view the evidence and draw all reasonable inferences in favor of plaintiff, B.F. Goodrich Co., 245 F.3d at 591-92, plaintiff's evidence creates a genuine issue of material fact with respect to his deliberate indifference claim against Meagher.

With respect to plaintiff's First Amendment claim that he was denied kosher meals, Birkett's affidavit states that plaintiff never requested such meals.[5] Plaintiff, however, provided an affidavit stated that he did request kosher meals. Plaintiff also provided a September 20, 2002 memorandum from Meagher (attached as part of Exhibit A to plaintiff's response) stating that Meagher was requesting that plaintiff be taken off the kosher diet program.[6] Given plaintiff's

---

[5]Birkett does not raise the issue of lack of personal involvement, nor do he or Meagher raise a statute of limitations defense.

[6]Plaintiff does not articulate why he has a First Amendment right to kosher meals.

affidavit and the memorandum, plaintiff has demonstrated that a genuine issue of material fact exists and, therefore Birkett and Meagher are not entitled to summary judgment on plaintiff's First Amendment claim.

### C. Statute of Limitations

McFarland, Palmer and Kahler raise a statute of limitations defense with respect to the retaliation claim against them. In <u>Wilson v. Garcia</u>, 471 U.S. 261, 266, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985) (later overruled only as to claims brought under the Securities Exchange Act of 1934, not applicable here), the Supreme Court held that, because 42 U.S.C. § 1983 contains no statute of limitations, a federal court considering an action brought under that statute must borrow the state statute of limitations that is "most analogous" to apply to the § 1983 claim. <u>Wilson</u>, 471 U.S. at 275. The Court then concluded that the most analogous cause of action under state law to § 1983 is a tort action for personal injuries. <u>Wilson</u>, 471 U.S. at 279. Thus, federal courts must apply the state statute of limitations for personal injury claims in all § 1983 cases. In Michigan, the general statute of limitations for personal injury actions is three years. <u>See</u> Mich. Comp. Laws Ann. § 600.5851.

Although statutes of limitations and tolling principles are governed by state law, the question of when civil rights claims accrue remains one of federal law. <u>LRL Properties v. Portage Metro Hous. Auth.</u>, 55 F.3d 1097, 1107 (6th Cir. 1995); <u>Sevier v. Turner</u>, 742 F.2d 262, 272 (6th Cir. 1984). Generally, a civil rights cause of action accrues for statute of limitations purposes when the plaintiff knows or has reason to know of the injury that is the basis of his action. <u>Friedman v. Estate of Presser</u>, 929 F.2d 1151, 1159 (6th Cir. 1991); <u>Sevier</u>, 742 F.2d at

273. "A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." Sevier, 742 F.2d at 273.

Although Michigan law at one time did toll the limitations period during a person's incarceration, in 1994 the Michigan legislature amended the tolling statute to remove imprisonment as a disability tolling the statute of limitations. See 1993 Mich. Pub. Acts 78 (effective Apr. 1, 1994); see also, Wallace v. Engler, No. 95-40273, 1997 WL 111777, *6 (E.D. Mich. January 28, 1997). However, the statute of limitations would have been tolled while plaintiff was exhausting his administrative remedies. Brown v. Morgan, 209 F.3d 595, 596 (6th Cir. 2000), citing Harris v. Hegmann, 198 F.3d 153, 157-59 (5th Cir. 1999) (per curiam).

According to paragraph four of plaintiff's complaint, the retaliation through seizure of property by McFarland, on orders of Kahler and Palmer, occurred in November 13, 1997. Plaintiff acknowledges that date, but argues that the statute of limitations should be waived due to his part in a class action lawsuit filed by prisoners, Cain v. Michigan Department of Corrections.[7] According to plaintiff, because of the actions of MDOC's attorneys in Cain lead plaintiff to believe that the Cain settlement took of his property claim and, therefore, the statute of limitations did not start until after plaintiff learned that the settlement did not cover this claim.

In this case, while plaintiff provided an order from Cain and briefly discussed it in his response why it should toll any property claims he had, in paragraph four of plaintiff's complaint he states a retaliation claim, not a claim for loss property. Given that nothing in the Cain orders

---

[7]Two orders from Cain v. Michigan Department of Corrections are attached as Exhibit F to defendants' motions and as Exhibit D to plaintiff's response.

appears to discuss retaliation, that case is inapplicable here. The alleged retaliation occurred in 1997 and the statute of limitations has clearly passed. McFarland, Palmer and Kahler are therefore entitled to summary judgment.

## IV. Conclusion

For the reasons discussed above, the court recommends that defendants' motion to sever and transfer be **GRANTED** and that MacEachern, Tretheway, Grim, Napel, MacMeekin, Johns, Hofbauer, Aalto, and Alexander be severed from this action and transferred to the United States District Court for the Western District of Michigan.

Defendants' motion for summary judgment should be **GRANTED IN PART.** It is recommended that Caruso, McFarland, Palmer and Kahler be granted summary judgment on all claims against them and that they be dismissed from this action. It is also recommended that Birkett be granted summary judgment as to the deliberate indifference claim against him. The case should proceed only against Burt, Ocweija, Vallie, Cady and Carter, on the claim of deliberate indifference to medical needs, against Birkett and Meagher on the claim for First Amendment violations, and against Meagher on the claim for deliberate indifference to medical needs.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v.

<u>Walters</u>, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  <u>Willis v. Secretary of HHS</u>, 931 F.2d 390, 401 (6th Cir. 1991); <u>Smith v. Detroit Fed'n of Teachers Local 231</u>, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.

s/Virginia M. Morgan
Virginia M. Morgan
United States Magistrate Judge

Dated:  January 24, 2008

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on January 24, 2008.

s/Jane Johnson
Case Manager to
Magistrate Judge Virginia M. Morgan