UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


CAMERON LEE FITTS,

              Plaintiff,                    CIVIL ACTION NO. 05-73112

          v.                       DISTRICT JUDGE PAUL D. BORMAN

SHERRY BURT, KENNETH          MAGISTRATE JUDGE VIRGINIA M. MORGAN
MACEACHERN, JOHN OCWEIJA,
CAROL VALLIE, RICHARD CADY,
HEATHER CARTER, TOM MCFARLAND,
STEVE KAHLER, DEPUTY WARDEN
PALMER, CORRECTIONAL MEDICAL
SERVICES INC., CRAIG HUTCHINSON,
THOMAS BIRKETT, BARBARA MEAGHER,
PATRICIA L. CARUSO, GERALD HOFBAUER,
ROBERT NAPEL, JAMES TRETHEWAY,
KATHERINE AALTO, JAMES ALEXANDER,
DENNIS GRIM, PHIL JOHNS, and
JAMES MACMEEKIN,

              Defendants.
_____/

## REPORT AND RECOMMENDATION

### I. Introduction

      This is a *pro se* 42 U.S.C. § 1983 action in which the plaintiff, an inmate in the custody

of the Michigan Department of Corrections (MDOC), alleges that the defendants deprived

plaintiff of his rights under the United States Constitution.  On March 28, 2008, Judge Borman

(1) granted summary judgment in favor of defendants Hutchinson and CMS; (2) transferred all

-1-

claims against defendants MacEachern, Tretheway, Grim, Napel, MacMeekin, Johns, Hofbauer, Aalto, and Alexander to the United States District Court for the Western District of Michigan; (3) dismissed all claims against defendants Caruso, McFarland, Palmer, and Kahler; and (4) dismissed the deliberate indifference claims against defendants Birkett and Meagher (D/E #95). Therefore, the remaining claims in this case are plaintiff's deliberate indifference claims against defendants Burt, Ocweija, Vallie, Cady and Carter, and plaintiff's First Amendment claims against defendants Birkett and Meagher.

This matter comes before the Court on the remaining defendants' motion for summary judgment (D/E #121). Plaintiff has filed a response in opposition to defendants' motion (D/E #130). For the reasons stated below, it is recommended that defendants' motion be **GRANTED** and the case in this district be dismissed with prejudice.

## II. Background

### A. Complaint

Plaintiff is an inmate in the custody of the Michigan Department of Corrections (MDOC). On August 12, 2005, he filed suit pursuant to 42 U.S.C. § 1983 against MDOC Director Patricia Caruso, Correctional Medical Services (CMS), and twenty other MDOC and CMS officials, alleging that they were deliberately indifferent to his medical needs, that his personal property was taken in retaliation for his filing of various complaints and grievances, that defendants violated his right to equal protection of the law, that he was subjected to cruel and unusual punishment, and that various other constitutional wrongs were visited upon him (D/E # 1).

As noted above, only some of plaintiff's claims remain in this case.  In paragraph one of the complaint, plaintiff alleged that, while at the Southeastern Michigan Correctional Facility in Jackson, Michigan (JMF), defendants Burt, Ocweija, Vallie, Cady, and Carter acted with deliberate indifference to plaintiff's medical needs.  According to plaintiff, while he had been transferred to JMF to see a Dr. Hutchinson, defendants kept plaintiff in administrative segregation and transferred plaintiff back to Marquette Branch Prison (MBP) without letting plaintiff see Dr. Hutchinson.

In paragraph five of his complaint, plaintiff alleges that, at Standish Maximum Correctional Facility (SMF), Birkett and Meagher retaliated against plaintiff in 2003 by denying plaintiff his religious diet of kosher meals and by transferring plaintiff back to MBP.  According to plaintiff, Birkett and Meagher transferred plaintiff from SMF back to MBP "because the plaintiff had filed a lawsuit on Defendant Birkett in *Fitts El and Boyd v. Martin* et al. (sic)"[1]

**B. Pending Motion for Summary Judgment**

On September 30, 2008, defendants filed the motion for summary judgment pending before the Court (D/E #121).  In that motion, defendants argue that Burt, Ocweija, Vallie, Cady and Carter are entitled to summary judgment as to the deliberate indifference claims against them because neither the objective nor subjective element of a deliberate indifference claim is met in this case.  Defendants also argue that Burt, Ocweija, Cady and Carter are entitled to

---

[1]Plaintiff also made allegations against Birkett and Meagher with respect to plaintiff's removal from an mental health treatment program and a transfer from SMF in May of 2004, but Judge Borman has already granted Birkett and Meagher summary judgment on those claims. (D/E #95)

summary judgment due to their lack of personal involvement in the alleged constitutional violation.  Defendants further argue that Birkett and Meagher are entitled to summary judgment at to plaintiff's First Amendment claims because they were not personally involved in any denial of kosher meals and because a transfer is not an adverse act for retaliation purposes.

On November 20, 2008, plaintiff filed a response to defendants' motion for summary judgment (D/E #130).  In that response, plaintiff argues that his case meets the subjective component of a deliberate indifference claim because, contrary to defendants' assertions, no medical staff examined plaintiff prior to his transfer for JMF.  Plaintiff also argues that Burt, Ocweija, Vallie, Cady and Carter were all involved in a conspiracy against him.  Plaintiff further argues that, while plaintiff was approved for the kosher diet program, Birkett and Meagher denied them.  Plaintiff also argues that a transfer to another prison can be an adverse act where, as here, a prisoner is denied medical care because of the transfer.

### III. Standard of Review

Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56. Fed. R. Civ. P. 56(b) states that "[a] party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move without or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-movant.  See Matsushita Electric Industrial Co., Ltd. et al. v. Zenith Radio Corp., et. al., 475 U.S. 547, 587, 106 S.Ct. 1348, 1356 (1986); see also B.F. Goodrich Co. v. U.S. Filter Corp., 245 F.3d 587, 591-92 (6th Cir. 2001).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  Once the moving party has carried his burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial."  Matsushita, 475 U.S. at 587, 106 S.Ct. 1348.  The opposing party cannot merely rest upon the allegations contained in his pleadings.  Rather, he must submit evidence demonstrating that material issues of fact exist. Banks v. Wolfe County Bd. of Educ., 330 F.3d 888, 892 (6th Cir. 2003); Fed. R. Civ. P. 56(e). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587, quoting First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 1575, 1592 (1968)).

## IV. Discussion

### A. Claims Against Defendants Burt, Ocweija, Vallie, Cady, and Carter

As discussed above, plaintiff alleges that defendants Burt, Ocweija, Vallie, Cady, and Carter acted with deliberate indifference to plaintiff's medical needs while plaintiff was incarcerated at JMF when they transferred plaintiff back to MBP without letting plaintiff see Dr. Hutchinson despite the fact that plaintiff had been sent to JMF to see Dr. Hutchinson. (Complaint, ¶ 1).  Defendants argue in their motion that no genuine issue of material fact exists with respect to either component of plaintiff's deliberate indifference claim and that defendants

are entitled to judgment as a matter of law.  Defendants also argue that only Vallie was personally involved in the transfer.

### 1. Genuine Issue of Material Fact

A prisoner's claim that his constitutional right to medical treatment was violated is analyzed under the Eighth Amendment.  See Estelle v. Gamble, 429 U.S. 97, 103-104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).  To state a § 1983 claim for a violation of a prisoner's Eighth Amendment rights due to inadequate medical care, the prisoner must allege facts evidencing a deliberate indifference to serious medical needs.  Wilson v. Seiter, 501 U.S. 294, 297, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).  To succeed on a claim of deliberate indifference, plaintiff must satisfy two elements, an objective one and a subjective one.  Wilson, 501 U.S. at 300. Defendants argue that neither of those two components is satisfied in this case.

### a. Objective Component

The objective component of a deliberate indifference claim is satisfied by a showing that plaintiff had a serious medical need.  Wilson, 501 U.S. at 297.  "'Where the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person,' this obviousness is itself sufficient to satisfy the objective component of the adequate medical care test."  Johnson v. Karnes, 398 F.3d 868, 874 (6th Cir. 2005), quoting Blackmore v. Kalamazoo County, 390 F.3d 890, 899 (6th Cir. 2004).  However if the need involves minor needs or non-obvious complaints of a serious need for medical care, the plaintiff "'must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment.'"  Johnson, 398 F.3d at 874, quoting Napier v. Madison County, Kentucky, 238 F.3d 739, 742 (6th Cir. 2001).

-6-

While defendants do not submit any evidence in support of their argument, they need not support their motion with affidavits or other similar materials "*negating*" plaintiff's claim, Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (original emphasis), and "the burden on the moving party may be discharged by 'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325. Here, defendants point out that plaintiff has no evidence explaining his need for medical care at JMF or showing that he suffered from any serious condition that could not be treated at MBP.

In response to defendants' motion, plaintiff merely makes the unsupported assertion that the sole reason he was sent to JMF was in order to see Dr. Hutchinson, who plaintiff identifies as an infectious disease specialist, and that plaintiff would not have been transferred from MBP to JMF originally if he could have received proper care at MBP. (Plaintiff's Response to Defendants' Motion for Summary Judgment, p. 4)[2] Plaintiff has merely rested on the unsupported allegations of his complaint and, even viewing the evidence and drawing all reasonable inferences in favor of plaintiff, a rational trier of fact could not find for plaintiff. Consequently, no genuine issue of material fact exists with respect to the objective component of

---

[2]While not cited to by either plaintiff or defendants, this Court would note that defendant Vallie's affidavit does state that plaintiff "was transferred to JMF for a medical appointment." (Affidavit of Carol Vallie, ¶ 3; attached as Exhibit B to Defendants' Motion for Summary Judgment) That affidavit appears to be the only evidence regarding plaintiff's medical needs and it is insufficient to demonstrate that a genuine issue of material fact exists with respect to whether plaintiff had a serious medical need.

plaintiff's deliberate indifference claim and defendants Burt, Ocweija, Vallie, Cady, and Carter are entitled to judgment as a matter of law.

**b. Subjective Component**

To satisfy the subjective component of the adequate medical care test, the plaintiff must demonstrate that the defendant "subjectively perceived a risk of harm and then disregarded it." Farmer v. Brennan, 511 U.S. 825 (1994); Comstock v. McCrary, 273 F.3d 693, 703 (6th Cir. 2001). Deliberate indifference is characterized by obduracy and wantonness, not inadvertence or good faith error. Gibson v. Foltz, 963 F.2d 851, 853 (6th Cir. 1992). Moreover, where the prisoner has received some medical attention and the dispute is over the adequacy of the treatment, courts are reluctant to second guess medical judgments, Westlake v. Lucas, 537 F.2d 857, 860 n. 5 (6th Cir. 1976), and deliberate indifference does not include negligence in diagnosing a medical condition. Sanderfer v. Nichols, 62 F.3d 151, 154 (6th Cir. 1995) (citations omitted). However, it is not necessary for a plaintiff to "show that the official acted 'for the very purpose of causing harm or with knowledge that harm will result.'" Comstock, 273 F.3d at 703, quoting Farmer, 511 U.S. at 835. Put simply, "deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." Comstock, 273 F.3d at 703, quoting Farmer, 511 U.S. at 835.

In their motion for summary judgment, defendants argue that the subjective component of a deliberate indifference claim is not satisfied in this case because prison medical staff cleared plaintiff for transfer out of JMF and the defendants were entitled to rely on medical staff's judgment. In support of their argument, defendants provide a progress note dated January 13,

2004, that they claim approved his transfer out of JMF (Progress Note dated January 13, 2004; attached as Exhibit A to Defendants' Motion for Summary Judgment), an affidavit from defendant Vallie stating that she believed that all of plaintiff's medical needs had been met when she transferred him (Affidavit of Carol Vallie, ¶ 3; attached as Exhibit B to Defendants' Motion for Summary Judgment), and a transfer order signed by defendant Vallie that contained a comment indicating that the plaintiff was approved for transfer back to MBP because his medical needs had been met (Transfer Order, dated January 20, 2004; attached to Vallie Affidavit (Ex. B to Defendants' Motion for Summary Judgment). The "comments" section of the transfer order reads, "Prisoner is being returned to MBP-as medical needs have been met. Approved by S. Schooley, #16-3." (Transfer Order, dated January 20, 2004; attached to Vallie Affidavit (Ex. B to Defendants' Motion for Summary Judgment)

Plaintiff does not submit any evidence relating to this issue in his response. Instead, plaintiff asserts, without any support, that no medical staff ever examined plaintiff prior to his transfer and, as such, a clearance for transfer could not have been issued. (Plaintiff's Response to Defendants' Motion for Summary Judgment, pp. 4-5) Plaintiff also asserts that the progress report relied upon by defendants states that plaintiff was cleared for transfer *to* JMF, not *from* JMF. (Progress Note dated January 13, 2004; attached as Exhibit A to Defendants' Motion for Summary Judgment)

Viewing the evidence and making all reasonable inferences in favor of plaintiff, as the Court must, <u>Matsushita</u>, 475 U.S. at 587, this Court finds that no genuine issue of material fact exists with respect to the subjective component of plaintiff's deliberate indifference claim and

that defendants Burt, Ocweija, Vallie, Cady, and Carter are entitled to judgment as a matter of law.  As discussed above, the parties dispute what the progress report says, with defendants asserting that it clears plaintiff for a transfer out of JMF while plaintiff asserts that it clears plaintiff for a transfer to JMF.  Both readings offered by the parties are problematic as the progress report clears plaintiff for a transfer *to* somewhere and it was written while plaintiff was at JMF.[3]  This Court reads the progress report as expressly stating that plaintiff was cleared for transfer by the MDOC Bureau of Health Care to SMF, which would be the Standish Maximum Correctional Facility, but that view is also problematic in that plaintiff was transferred to MBP and not SMF.  Given the problems reading the progress report, there is a factual dispute with respect to that document.  However, that factual dispute is not material because the importance of the document is that plaintiff was medically cleared to transfer on January 13, 2004, and where plaintiff was to be transferred to is not material given plaintiff's claims in this case, *i.e.*, that his medical needs could only be met at JMF.[4]

Additionally, both defendant Vallie's affidavit and the transfer order indicate that plaintiff was cleared for transfer by medical personnel.  Viewing that evidence and the progress report together, it appears that defendants relied on the medical personnel in good faith when

_____

[3]The progress report is dated January 13, 2004 and both sides agree that plaintiff was at JMF between January 7, 2004 and January 20, 2004.   (Complaint, ¶¶ 1; Affidavit of Carol Vallie, ¶ 3; attached as Exhibit B to Defendants' Motion for Summary Judgment)

[4]This Court would also note that, even accepting plaintiff's reading of the progress report, the progress report would not conflict with defendants' arguments because, under plaintiff's reading, the progress report would involve plaintiff's transfer to JMF and would therefore be irrelevant to plaintiff's January 20, 2004 transfer out of JMF.

-10-

transferring plaintiff and, consequently, their actions would not have constitute deliberate indifference to plaintiff's serious medical needs, assuming *arguendo* that plaintiff had any serious medical needs.  As discussed above, deliberate indifference is characterized by obduracy and wantonness, not inadvertence or good faith error.  Gibson, 963 F.2d at 853.  Defendants are not medically trained and the evidence that plaintiff was cleared for transfer by the MDOC Bureau of Health Care and that defendants relied on the medical personnel in good faith when transferring plaintiff is sufficient to demonstrate the absence of a genuine issue of material fact as to the subjective component of plaintiff's deliberate indifference claim.  Moreover, plaintiff did not submit any evidence in response to defendants' motion and, instead, merely relied on the allegations in his complaint.[5]  By doing so, plaintiff has failed to demonstrate that a genuine issue of material fact exists with respect to the subjective component of his deliberate indifference claim and defendants Burt, Ocweija, Vallie, Cady, and Carter are entitled to judgment as a matter of law.

---

[5]Plaintiff did assert that an examination of plaintiff's medical file would confirm that plaintiff was never seen or cleared for transfer by medical staff, but plaintiff also conceded that he had no evidence in support of that assertion.  According to plaintiff, he does not have any evidence from that medical file because he was unable to request or obtain those documents due to the necessity of filing a response to defendants' motion.  (Plaintiff's Response to Defendants' Motion for Summary Judgment, p. 5)  This Court would note that plaintiff did not request a continuance of the summary judgment determination pursuant to Fed. R. Civ. P. 56(f) so that plaintiff could conduct necessary discovery and, instead, plaintiff chose to rely on his unsupported assertions.

### 2. Personal Involvement

Defendants Burt, Ocweija, Cady, and Carter also argue that they are entitled to summary judgment because they were not personally involved in the decision to transfer plaintiff back to MBP.  To succeed in under § 1983, a plaintiff must show personal involvement by the defendant in the constitutional violation.  Copeland v. Machulis, 57 F.3d 476, 481 (6th Cir. 1995) (per curiam).  A *respondeat superior* theory of liability, based on the right to control employees, is not cognizable under 42 U.S.C. § 1983.  See Turner v. City of Taylor,  412 F.3d 629, 649 (6th Cir. 2005); Hays v. Jefferson County, Ky., 668 F.2d 869, 874 (6th Cir. 1982).  "Thus, a supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it.  At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."  Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999) (citations omitted). Moreover, the Sixth Circuit held in Shehee that a denial of an administrative grievance and the failure to remedy the alleged constitutional violation did not constitute sufficient involvement to establish liability under 42 U.S.C. § 1983.  Shehee, 199 F.3d at 300.

In this case, the transfer order provided by defendants was only signed by defendant Vallie and defendants Burt, Ocweija, Cady, and Carter point to the lack of any evidence on plaintiff's part to support his allegations that they were personally involved in plaintiff's transfer. In response, plaintiff asserts that all of the above defendants were present at a meeting with plaintiff while plaintiff was in administrative segregation, that all of the above defendants were

-12-

present when threats of retaliation were made against plaintiff, and that all of the defendants were acting in conspiracy.  In support of his argument, plaintiff submits log entries from January 15, 2004 (Log, attached as Attachment 2 to Plaintiff's Response to Defendants' Motion for Summary Judgment).  However, plaintiff does not identify who made the log entries and, in any event, those log entries do not describe any meeting between plaintiff and defendants.  Likewise, plaintiff's allegations of conspiracy are completely unsupported.

Thus, defendants Burt, Ocweija, Cady and Carter have met their initial burden as the moving party by pointing out the absence of evidence to support plaintiff's case, Celotex, 477 U.S. at 323, and plaintiff has failed to produce any evidence demonstrating that a genuine issue of material fact exists with respect to that issue.  No rational trier of fact could find for plaintiff on the basis of the record before this Court and defendants Burt, Ocweija, Cady, and Carter are entitled to summary judgment on the basis that they were not personally involved in the alleged constitutional violation.

### B. Claims Against Defendants Birkett and Meagher

Plaintiff alleges that, while plaintiff was incarcerated at SMF in 2003, Birkett and Meagher retaliated against plaintiff by denying plaintiff his religious diet of kosher meals and by transferring plaintiff back to MBP.  According to plaintiff, Birkett and Meagher transferred plaintiff from SMF back to MBP "because the plaintiff had filed a lawsuit on Defendant Birkett in *Fitts El and Boyd v. Martin* et al. (sic)" (Complaint, ¶ 5)  In defendants' motion for summary judgment, they argue that Birkett and Meagher were not personally involved in the alleged denial of kosher meals and that a transfer does not constitute an adverse act.

-13-

### 1. Alleged Denial of Kosher Meals

As discussed above, to succeed in under § 1983, a plaintiff must show personal involvement by the defendant in the constitutional violation, Copeland, 57 F.3d at 481, and a respondeat superior theory of liability, based on the right to control employees, is not cognizable under 42 U.S.C. § 1983.  Turner, 412 F.3d at 649.  "Thus, a supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers" and  the failure to remedy a alleged constitutional violation does not constitute sufficient involvement to establish liability under 42 U.S.C. § 1983.  Shehee, 199 F.3d at 300.

In the motion for summary judgment, defendants note that only the Special Activities Coordinator can approve a kosher-meal request (PD 05.03.150 (KK); attached as Exhibit C to Defendants' Motion for Summary Judgment) and cite to an affidavit of defendant Birkett in which Birkett states that, while plaintiff was approved for kosher meals when he first transferred to SMF in 2002, plaintiff was transferred out of SMF on November 25, 2002, and that plaintiff did not submit inquiries to the Chaplain about a kosher diet when he returned to JMF on December 5, 2002.  (Affidavit of Thomas Birkett, ¶ 6, attached as Exhibit C to D/E #74).[6]

---

[6]An e-mail dated May 17, 2004, from Dave Burnett to Karen Weaver is attached to Birkett's affidavit and it also states that plaintiff did not inquire about kosher meals when he returned to SMF on November 25, 2002 (May 17, 2004 e-mail, attached as attachment 2 to Affidavit of Thomas Birkett).

-14-

Birkett's affidavit also states that plaintiff was later transferred to MBP before returning to SMF on May 12, 2004, and that the Special Activities Coordinator decided in 2004 that plaintiff was not eligible for the kosher diet program.  (Affidavit of Thomas Birkett, ¶ 6, attached as Exhibit C to D/E #74).  On the basis of that evidence, defendants argue that there is no evidence that they were personally involved in the alleged constitutional violation.

In response, plaintiff submits responses to his discovery requests in which defendant Birkett admits that plaintiff was approved for kosher meals on September 24, 2002.  (Birkett's Responses to Plaintiff's Request for Admissions, ¶ 6; attached as Attachment 3 to Plaintiff's Response to Defendants' Motion for Summary Judgment; Birkett's Response to Plaintiff's Request for Interrogatories, ¶ 6; attached as Attachment 4 to Plaintiff's Response to Defendants' Motion for Summary Judgment)  Plaintiff also submits a discovery response in which defendant Meagher denies sending a memorandum requesting plaintiff's removal from kosher diet program (Response to Plaintiff's Requests to Admit to Barbara Meagher, ¶ 3; attached as Attachment 5 to Plaintiff's Response to Defendants' Motion for Summary Judgment), and a memorandum dated September 20, 2002, in which defendant Meagher wrote that she was requesting that plaintiff be taken off the kosher diet program because plaintiff had taken a regular tray his first day at SMF (Memorandum, attached as Attachment 6 to Plaintiff's Response to Defendants' Motion for Summary Judgment).

In this case, plaintiff's complaint does not specifically allege how Birkett and Meagher denied plaintiff kosher meals and it is unclear whether plaintiff claims that defendants denied his request for kosher meals or whether plaintiff claims that he was approved for the kosher diet

program by the MDOC, but defendants denied him access to those meals.  What is clear is that plaintiff alleges that the alleged denial occurred in 2003.  (Complaint, ¶ 5)  Defendants' evidence provides that plaintiff did not inquire about kosher meals when he returned to SMF on December 5, 2002, and that, when plaintiff did request such meals at SMF again, it was in 2004 and plaintiff's request was denied by the Special Activities Coordinator, not defendants.  Plaintiff's evidence, on the other hand, relates to plaintiff's first housing period at JMF and that time period is neither the subject of plaintiff's complaint nor relevant to plaintiff's claims.  Moreover, plaintiff submits no evidence of personal involvement by defendants in any denial of kosher meals except for the memorandum by Meagher and that memorandum only provides that Meagher requested, during plaintiff's first housing at JMF, that the Chaplain's Office and Dave Burnett remove plaintiff from the kosher meals program, which is insufficient to demonstrate personal involvement.  See Jacob v. Township of West Bloomfield, 192 Fed. Appx. 330, 336-337 (6th Cir. 2006) (finding that a defendant was not personally involved in an alleged constitutional violation where the defendant only requested a court to sign an order and the court made the decision to sign the order that led to the alleged constitutional violation).  Thus, even viewing the evidence and making all reasonable inferences in favor of plaintiff, this Court finds that no genuine issue of material fact exists with respect to whether defendants Birkett and Meagher were involved in the alleged denial of kosher meals and those two defendants are entitled to judgment as a matter of law.

### 2. Alleged Retaliatory Transfer

To state a claim alleging retaliation for exercising a constitutional right, a plaintiff must show that (1) he engaged in protected conduct; (2) the defendant took an adverse action against him "that would deter a person of ordinary firmness from continuing to engage in that conduct;" and (3) that the adverse action was taken (at least in part) because of the protected conduct. Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir.1999) (en banc).  "Although the elements of a First Amendment retaliation claim are constant, the underlying concepts that they signify will vary with the setting-whether activity is 'protected' or an action is 'adverse' will depend on context."  Bell v. Johnson, 308 F.3d 594, 602-603 (6th Cir.2002) (internal quotation marks omitted).

In this case, defendants Birkett and Meagher argue that plaintiff has failed to state a claim for retaliation because he failed to allege the existence of an adverse action taken by defendants. "An adverse action is one that would 'deter a person of ordinary firmness' from the exercise of the right at stake."  Thaddeus-X v. Blatter, 175 F.3d 378, 396 (6th Cir. 1999), quoting Bart v. Telford, 677 F.2d 622, 625 (7th Cir.1982).  See also Bloch v. Ribar, 156 F.3d 673, 678 (6th Cir.1998) (requiring plaintiff to prove, for a First Amendment retaliation claim, that "the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity").  Moreover, "in most cases, the question of whether an alleged retaliatory action poses a sufficient deterrent threat to be actionable will not be amenable to resolution as a matter of law."  Bell v. Johnson, 308 F.3d 594,

-17-

603 (6th Cir. 2002). Unless the claimed retaliatory action is truly inconsequential, the plaintiff's claim should go to the jury. Bell, 308 F.3d at 603.

Also, as the Thaddeus-X court noted, "since there is no justification for harassing people for exercising their constitutional rights, [the deterrent effect] need not be great in order to be actionable." 175 F.3d at 397 (quoting Bart v. Telford, 677 F.2d 622, 625 (7th Cir. 1982)). A constitutional tort, however, requires that the plaintiff suffer an injury, and it would certainly "trivialize the First Amendment to hold that harassment for exercising [one's constitutional rights] was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise ...." Thaddeus-X, 175 F.3d at 397, quoting Bart, 677 F.2d at 625.

In this case, defendants argue that plaintiff's transfer from SMF to MBP is not an adverse action. Since prisoners are expected to endure more than the average citizen, and since transfers are common among prisons, ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct. See Hix v. Tennessee Dept. of Corrections, 196 Fed. Appx. 350, 358, (6th Cir. August 22, 2006); King v. Zamiara, 150 Fed. Appx. 485, 494 (6th Cir. October 7, 2005); Smith v. Yarrow, 78 Fed. Appx. 529, 543-44 (6th Cir. October 20, 2003) (collecting cases). However, where there are aggravating factors, the courts have been willing to find that a prison transfer would deter a person of ordinary firmness. See Siggers-El v. Barlow, 412 F.3d 693, 704 (6th Cir. 2005); Hix, 196 Fed. Appx. at 358. In Siggers-El, the aggravating factors accompanying the transfer included certain foreseeable consequences of the transfer; loss of a high paying job needed to pay for the plaintiff's attorney and an increased difficulties for the

-18-

plaintiff's attorney in visiting with or representing the plaintiff because he was moved further away from her. 412 F.3d at 704. See also McWright v. Gerald, No. 03-70167, 2004 WL 768641, *5 (E.D. Mich. March 26, 2004) (finding that the plaintiff met the elements of a retaliatory transfer claim where evidence suggested a prison transfer was undertaken purposefully and expressly to interfere with an inmate's right of access to his attorney.)

Here, plaintiff alleges that Birkett and Meagher retaliated against plaintiff in 2003 by transferring plaintiff from SMF to MBP. (Complaint, ¶ 5) The MDOC Transit List for plaintiff does not reflect that plaintiff was transferred from SMF to MBP on March 18, 2003 (MDOC Transit List, attached as Attachment 3 to defendant Birkett's Affidavit), but there is simply no evidence in the record demonstrating any aggravating factors accompanying the transfer that would suggest the transfer was an adverse act. Plaintiff argues that the transfer was an adverse act because it led to him being denied mental health treatment in the SSOP Program. However, the denial of plaintiff's request for SSOP treatment occurred in 2004, and had nothing to do with the 2003 transfer at issue in plaintiff's complaint. Moreover, as noted above, Judge Borman has already granted Birkett and Meagher summary judgment on those claims relating to the denial of plaintiff's request for SSOP treatment due to a lack of personal involvement and, as stated in Judge Borman's order, "[i]t is clear from the record that the decision not to grant Plaintiff's request to participate in the SSOP program was made by a committee[.]" (D/E #95, p. 9) Therefore, even if plaintiff's argument was made with respect to the right transfer, it is clear that the decision to deny plaintiff's request to enter the SSOP was not made by Birkett or Meagher

-19-

and it was not an aggravating factor accompanying plaintiff's transfer.  Plaintiff has failed to

demonstrate that a genuine issue of material fact exists as to whether his 2003 transfer

constituted an adverse action and defendants Birkett and Meagher are entitled to summary

judgment on plaintiff's claim.

**V. Conclusion**

For the reasons discussed above, it is recommended that defendants' motion be

**GRANTED** and the case in this district be dismissed with prejudice.

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to act within ten (10) days of service of a copy hereof as

provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific

objections constitutes a waiver of any further right of appeal.  Thomas v. Arn, 474 U.S. 140

(1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v.

Walters, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues,

but fail to raise others with specificity, will not preserve all the objections a party might have to

this Report and Recommendation.  Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir.

1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).

Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this

magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the

opposing party may file a response.  The response shall be no more than 20 pages in length

unless, by motion and order, the page limit is extended by the court.  The response shall address

each issue contained within the objections specifically and in the same order raised.


s/Virginia M. Morgan
Virginia M. Morgan
United States Magistrate Judge


Dated: March 11, 2009

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and plaintiff via
the Court's ECF System and/or U. S. Mail on March 11, 2009.

s/Jane Johnson
Case Manager to
Magistrate Judge Virginia M. Morgan