**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

CAMERON LEE FITTS

        Plaintiff,                Case No. 05-CV-73112

v.                                    JUDGE PAUL D. BORMAN
                                        MAGISTRATE JUDGE VIRGINIA MORGAN

SHERRY BURT, KENNETH
MACEACHERN, JOHN OCWEIJA,
CAROL VALLIE, RICHARD CADY,
HEATHER CARTER, TOM MCFARLAND,
STEVE KAHLER, DEPUTY WARDEN
PALMER, CORRECTIONAL MEDICAL
SERVICES INC., CRAIG HUTCHINSON,
THOMAS BIRKETT, BARBARA MEAGHER,
PATRICIA L. CARUSO, GERALD HOFBAUER,
ROBERT NAPEL, JAMES TRETHEWAY,
KATHERINE AALTO, JAMES ALEXANDER,
DENNIS GRIM, PHIL JOHNS, and JAMES
MACMEEKIN,

        Defendants.
_____/

**OPINION AND ORDER (1) ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT,
(2) DENYING PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION IN FAVOR OF SUMMARY JUDGMENT, AND
(3) DISMISSING THE ACTION.**

Before the Court are plaintiff Cameron Lee Fitts's ("Plaintiff's") Objections to Magistrate Judge Virginia M. Morgan's March 11, 2009 Report and Recommendation in favor of granting defendants Sherry Burt's, John Ocweija's, Carol Vallie's, Richard Cady's, Heather Carter's, Thomas Birkett's, and Barbara Meagher's (collectively "Defendants'") Motion for Summary Judgment. (Dkt. No. 121). The Court now reviews the Objections, the Report and Recommendation and pertinent

1

parts of the record *de novo* pursuant to 28 U.S.C. § 636(b). At the conclusion of its review, this Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id*.

**I.     BACKGROUND**

Plaintiff is an inmate in the custody of the Michigan Department of Corrections ("MDOC"). On August 12, 2005, Plaintiff, proceeding *pro se*, filed suit under 42 U.S.C. § 1983 action against MDOC Director Patricia Caruso, Correctional Medical Services ("CMS"), and twenty other MDOC and CMS officials, alleging that they were deliberately indifferent to his medical needs; that his personal property was taken in retaliation for his filing of various complaints and grievances; that various defendants violated his right to equal protection of the law; and that he was subjected to cruel and unusual punishment.

On March 28, 2008, this Court (1) granted summary judgment in favor of defendants Craig Hutchinson and Correctional Medical Services; (2) transferred all claims against defendants Kenneth MacEachern, James Tretheway, Dennis Grim, Ropert Napel, James MacMeekin, Phil Johns, Gerald Hofbauer, Katherine Aalto, and James Alexander to the United States District Court for the Western District of Michigan; (3) dismissed all claims against defendants Patricia Caruso, Tom McFarland, Deputy Warden Palmer, and Steve Kahler; and (4) dismissed Plaintiff's deliberate indifference claims against defendants Thomas Birkett and Barbara Meagher. (Dkt. No. 95).

The remaining claims are an Eighth Amendment claim against defendants Burt, Ocweija, Vallie, Cady, and Carter and a First Amendment claim against defendants Birkett and Meagher.

**II.    ANALYSIS**

    **A.     Legal Standard**

Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim, counterclaim, or cross-claim is asserted may "at any time, move with or without supporting affidavits, for a summary judgment in the party's favor as to all or any part thereof." FED. R. CIV. P. 56(b). Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

> Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323; *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting BLACK'S LAW DICTIONARY 881 (6th ed. 1979)) (citations omitted). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Conversely, where a reasonable jury could not find for the nonmoving party, there is no genuine issue of material fact for trial. *Id.*; *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993). In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party. *Bender v. Southland Corp.*, 749 F.2d 1205, 1210–11 (6th Cir. 1984).

If this burden is met by the moving party, the non-moving party's failure to make a showing

that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322-23. The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. FED. R. CIV. P. 56(e).

The rule requires that non-moving party to introduce "evidence of evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see Anderson*, 477 U.S. at 252 (holding that the non-moving party must produce more than a scintilla of evidence to survive summary judgment).

      **B.**      **Objections**

             **1.**      **Objections 1-3: Plaintiff's Eighth Amendment Deliberate Indifference Claims Against Burt, Ocweija, Vallie, Cady, and Carter**

Plaintiff claims that Burt, Ocweija, Vallie, Cady, and Carter acted with deliberate indifference to Plaintiff's medical needed in violation of the Eighth Amendment while Plaintiff was incarcerated at State Prison of Southern Michigan ("JMF") when they transferred Plaintiff back to Marquette Branch Prison ("MBP") without letting him see Dr. Craig Hutchinson, or any other medical staff, for that matter, even though he was sent to JMF to see Dr. Hutchinson.

As noted by Magistrate Judge Morgan, a prisoner's claim that his constitutional right to medical treatment is analyzed under the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). To state a section 1983 claim for a violation of a prisoner's Eighth Amendment right to adequate medical care, the prisoner must allege facts evidencing a deliberate indifference to serious medical needs. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991).

To establish such a claim of deliberate indifference, a plaintiff must satisfy both an objective and subjective component. "To satisfy the objective component, the plaintiff must allege that the medical need at issue is 'sufficiently serious.'" *Comstock v. McCrary*, 273 F.3d 693, 702-03 (6th Cir. 2001) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "To satisfy the subjective component, the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Id*. at 703. Plaintiff objects to Magistrate Judge Morgan's findings as to both of these components. In addition, Plaintiff object to the Magistrate's finding that Burt, Ocweija, Cady, and Carter are entitled to summary judgment because they were not involved in the decision to transfer Plaintiff back to MBP.

Plaintiff first contends that the Magistrate Judge's Report and Recommendation failed to take into account the seriousness of his need for medical care. "'Where the seriousness of a prisoner's need for medical care is obvious even to a lay person,' this obviousness is itself sufficient to satisfy the objective component of the adequate medical care test." *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (quoting *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). But where the need involves minor needs or a non-obvious complaint of a serious need for medical care, the plaintiff "'must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment.'" *Johnson*, 398 F.3d at 874 (quoting *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001)).

Plaintiff first argues that his suffering from Hepatitis C is sufficient to show that his need for medical care is obvious even to a lay person. Alternatively, Plaintiff asserts that he had placed such "verifiable medical evidence" in the record by his reference to his Hepatitis C infection. The Court does not agree with either of Plaintiff's arguments.

5

Contrary to Plaintiff's assertions, the evidence tends to show that Plaintiff was seen by a medical professional at JMF, who cleared him for transfer out of JMF on January 13, 2004. (Defs.' Br. Ex. A, MDOC Bureau of Health Care Progress Notes).

But, even assuming that Plaintiff was not seen by medical personnel at JMF before he was transferred, Plaintiff has not satisfied the objective component of his deliberate indifference claim. While his Hepatitis C infection may in fact necessitate a sufficiently serious need for medical care at times, Plaintiff has not provided this Court with any evidence showing that he had such a sufficiently serious need during the time in question, especially one that would be obvious to a lay person. His "verifying medical evidence" of merely having Hepatitis C does not establish any "detrimental effect of the delay in medical treatment." Furthermore, the mere fact that Plaintiff was transferred to JMF for a "medical appointment" does not create a genuine issue of material fact as to whether his need for medical care was sufficiently serious.

Accordingly, the Court finds that Plaintiff has not established the objective component of his deliberate indifference claim. Because Plaintiff must establish both the objective and subjective components of a deliberate indifference claim, the Court need not address Plaintiff's objection to the Magistrate Judge's finding regarding the subjective component. In addition, the Court need not address Plaintiff's objection to Magistrate Judge Morgan's finding that Burt, Ocweija, Cady, and Carter were not personally involved in the decision to transfer Plaintiff to MBP, as that issue is also now moot.

### 3.     Objection #4: Denial of Kosher Meals

Plaintiff alleges that while Plaintiff was incarcerated at Standish Maximum Correctional Facility ("SMF") in 2003, Birkett and Meagher retaliated against Plaintiff for filing a previous lawsuit against Birkett by denying Plaintiff his diet of kosher meals. Magistrate Judge Morgan

found that no genuine issue of material fact exists as to whether Birkett and Meagher were involved in the alleged denial of kosher meals. In his Objections, Plaintiff submits that Meagher and Birkett denied him access to kosher meals and initiated action that later barred him from receiving kosher meals. Hence, Plaintiff is arguing that Meagher and Birkett "at least implicitly authorized, approved, or knowingly acquiesced," *Combs v. Wilkinson*, 315 F.3d 548, 558 (6th Cir. 2002) (quoting *Hays v. Jefferson County*, 668 F.2d 869, 874 (6th Cir. 1982)), in depriving Plaintiff of kosher meals.

A review of the available facts and underlying policy are critical in properly addressing Plaintiff's objection. Pursuant to a transfer order dated September 18, 2002, Plaintiff was transferred from MBP to SMF so that Plaintiff could be placed on a kosher diet. (Dkt. No. 74 Ex. C, Birkett Aff. ¶ 6). According to Birkett and Meagher, Plaintiff was approved for kosher meal accommodations at SMF on September 24, 2002. (Birkett Aff. ¶ 6) On September 20, 2002, however, Meagher sent a memorandum to Plaintiff, which provides in relevant part: "We are requesting, through the Chaplain's Office and Dave Burnett, that you be taken off the kosher diet program, since you took a regular tray your first day here." (Pl.'s Resp. Ex. 5, 09/20/02 Letter). Shortly thereafter, on November 25, 2002, he was transferred to Huron Valley Center. (Birkett Aff. ¶ 6). From the Huron Valley Center, Plaintiff returned to SMF, where the record shows that Plaintiff did not submit inquiries to the chaplain about his approved kosher diet. (*Id*.) On March 18, 2003, he was transferred back to MBP, where the record is devoid of any request by Plaintiff for kosher meals. Plaintiff remained at MBP, with the exception of his brief stint at JMF, until May 12, 2004, when he was transferred back to SMF. (*Id*.) At that time, Dave Burnett, the Special Activities Coordinator, determined that Plaintiff was not eligible for kosher meal accommodations. (*Id*.)

An e-mail exchange between two parties unnamed in this suit also sheds some light on this

issue.  It provides in relevant part:

> [From Karen K. Weaver to Dave J. Burnett on May 14, 2004]
> [Plaintiff] RETURNED HERE 5/12 FROM MBP.  HE WAS ALSO TRANSFERRED FROM MBP 8/27/02 TO SMF. HE WAS ADDED TO KOSHER HERE 9/24/02.  THEN WENT TO HVC 11/25/02.  WHEN HE RETURNED HE DID NOT INQUIRE ABOUT GETTING ON KOSHER AND RODE OUT 3/18/08. IS HE ELIGIBLE TO GET KOSHER?
>
> . . .
>
> [From Dave J. Burnett to Karen K. Weaver on May 17, 2004]
> [Plaintiff] is not approved for [k]osher meat accommodation at this time.  He is eligible to request [k]osher meals and to go through the review process.

 (Dkt. No. 74, Birkett Aff. Ex. 2).

Finally, MDOC Policy Directive 05.03.150 ("Religious Practices Policy"), effective May 1, 2001, addresses the religious beliefs and practices of prisoners and governs the distribution of religious meals, including the kosher meals at issue here.  The Religious Practices Policy provides in pertinent part:

> KK. Except as set forth in this policy, a prisoner is eligible to eat from a religious menu if it is necessary to the practice of the prisoner[']s designated religion; however, the prisoner must first request approval from the Warden or designee, who shall obtain information regarding the prisoner[']s request and religious beliefs and refer the request to the CFA Special Activities Coordinator for final approval. . . .
> LL. . . . Once the meals are provided, the prisoner shall not be allowed to eat from the regular menu.  The prisoner shall continue to be provided meals from the religious menu except as set forth in Paragraphs MM and NN.
> MM. A prisoner approved to eat from a religious menu must notify the Warden in writing if []he no longer wants to eat from the religious menu.  The approval shall be rescinded upon receipt of the request.
> NN. A prisoner approved to eat from a religious menu shall have that approval rescinded if []he eats or has in his[] possession any food item that violates a tenet of his[] designated religion.  The approval shall be rescinded only after a hearing is conducted pursuant to Administrative Rule 791.3310 to establish the basis for that removal.

(Def.'s Br. Ex. C).  Thus, according to the Religious Practices Policy, only the CFA Special

Activities Coordinator may approve religious menu requests. Once the request has been approved, it may be rescinded for the prisoner's failure to strictly observe the dietary requirements of his religion but only after a hearing has been conducted to establish the basis for that removal.

The only evidence that Plaintiff has provided the Court of either Birkett's or Meagher's involvement in denying him kosher meals is the letter from Meagher to Plaintiff, in which she informs Plaintiff that "[w]e are requesting, through the Chaplain's Office and Dave Burnett, that you be taken off the [k]osher diet program, since you took a regular tray your first day here." (09/20/02 Letter). Even assuming that "we" refers to both herself and Birkett as the deputy warden and warden of SMF, the Court finds that no reasonable juror could find that Birkett and Meagher were involved in the actual rescission of Plaintiff's kosher menu accommodations, which as shown in the e-mails above occurred in May 2004. Meagher may have requested, perhaps even on behalf of herself and Birkett, that Plaintiff be taken off SMF's kosher diet program, but, as shown in the e-mail exchange between Dave Burnett and Karen Weaver, the ultimate decision to do so rested with Dave Burnett. Even though the MDOC regulations require that a hearing be conducted to establish the basis for the removal, when asked by Karen Weaver about Plaintiff's eligibility, the evidence shows that only Dave Burnett made the decision to deny Plaintiff a kosher meal accommodation. There is no mention of Meagher's request or even of her claim that Plaintiff took a regular tray during his first day at SMF.

Moreover, pursuant to the Religious Practices Policy, Plaintiff's kosher meal approval should still be in place, as it has not yet been properly rescinded. (Policy Directive 05.03.150 ¶ 22) ("The approval shall be rescinded *only after* a hearing is conducted. . . ."). But Plaintiff has not presented this Court with any evidence showing—or even alleged—that he ever attempted to assert or exercise his kosher meal accommodation while at SMF or anytime before Dave Burnett rescinded the

9

accommodation. In fact, Plaintiff does not refute Birkett's affidavit, where he testifies that Plaintiff did not submit inquires to the chaplain about his approved kosher diet while at SMF. Certainly, Birkett or Meagher cannot be found liable for retaliating against Plaintiff by allegedly depriving him of his kosher meal accommodation when Plaintiff has not even alleged that he ever tried to exercise the accommodation, for example, by contacting the Chaplain's Office or Dave Burnett or even by objecting to the transfer to MBD.

Thus, Plaintiff's retaliation claim against Birkett and Meagher must fail not only because Plaintiff has failed to show that Meagher and Birkett were involved in the May 2004 rescission of his kosher accommodation but also because Plaintiff did not attempt to engage in any protected conduct—ie., assert his kosher meal accommodation.

Accordingly, the Court denies Plaintiffs objection and grants summary judgment to Birkett and Meagher on Plaintiff's denial of kosher meals retaliation claim.

### 5. Objection #5: Retaliatory Transfer

Lastly, Plaintiff objects to the Magistrate Judge's finding that Birkett and Meagher were entitled to summary judgment on Plaintiff's retaliatory transfer claim. In his Complaint, Plaintiff alleges that Birkett and Meagher retaliated against Plaintiff for his filing suit against Birkett in 2003 by transferring him to MBP from SMF after Plaintiff was sent to SMF to participate in the Secure Status Out-Patient Treatment Program ("SSOP").

A plaintiff pursuing a retaliation claim must show that: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).

In her Report and Recommendation, the Magistrate Judge found that Plaintiff failed to establish the second prong—that an adverse action was taken against Plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct. When addressing retaliatory transfer claims by prisoners, the adverse action inquiry is slightly altered, because prisoners are expected to endure more than the average citizen and because transfers are common among prisoners. *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005). Therefore, transfers generally are not thought to deter a prisoner of ordinary firmness from engaging in protected conduct. *Id*. But where a prisoner is not only transferred but also suffers a number of foreseeable consequences, which inhibit his ability to engage in protected conduct, then courts are willing to find that the transfer would deter a person of ordinary firmness. *Id*. at 702.

Here, Plaintiff asserts that he was denied placement in a needed mental health program, SSOP, because he was transferred as a result of the previous litigation against Birkett. It is true that on May 17, 2004 and only five days after arriving at SMF to be treated for mental health problems, Plaintiff was transferred back to MBP. But according to Birkett's testimony and the May 14, 2007 transfer order, Plaintiff was transferred back to MBP because he did not fit the criteria for the SSOP due to his extensive detention and refusal to participate in the SSOP []." (Pl.'s Resp. Br. Ex. 4, Birkett's Resp to Interrog. ¶ 10; Birkett Aff. ¶ 4 & Ex. 1, 05/14/04 Transfer Order). In addition, as stated in this Court's March 28, 2008 Order and Opinion, "[i]t is clear from the record that the decision not to grant Plaintiff's request to participate in the SSOP [] was made by a committee," not solely by Birkett and Meagher.[1] (Dkt. No. 95 at 9). In fact, Birkett, the person against whom the

---

[1] The SSOP committee is comprised of at least twelve different people, including Meagher, two assistant deputy wardens, two residential unit managers, an assistant residential unit supervisor, a case manager, two out patient mental health members, a classification director, special education teacher, and residential unit officers.

11

2003 lawsuit was filed, was not involved in the SSOP approval process, (Birkett Aff. ¶ 3), and neither Birkett or Meagher approved the transfer order. (*Id*. Ex. 1, 05/14/04 Transfer Order).

From this, the Court concludes that Plaintiff has failed to establish that there was adverse action taken against him that would deter a prisoner of ordinary fitness from accessing the courts or even that Birkett and Meagher were sufficiently involved in the decision to deny Plaintiff an opportunity to participate in the SSOP or the actual transfer from SMF to MBD. [2]  Furthermore, Plaintiff has failed to show that he suffered any foreseeable consequences, of the type present in *Siggers-El*, which inhibit his ability to access the courts. That is, even if he were to show that the transfer resulted in him being denied into the SSOP, such a denial does not inhibit his ability to engage in the protected conduct that he asserts was infringed upon. Accordingly, the Court denies Plaintiffs objection and grants summary judgment to Birkett and Meagher on Plaintiff's retaliatory transfer claim.

## III. CONCLUSION

For these reasons, the Court:

(1) **ADOPTS** the Magistrate Judges's Report and Recommendation granting Defendants' Motion for Summary Judgment;

(2) **DENIES** Plaintiff's Objections to the Magistrate Judge's Report and Recommendation in favor of summary; and

(3) There being no remaining claims against any Defendants, **DISMISSES** the action **WITH PREJUDICE**.

---

[2] In his Objections, Plaintiff alleges—for the first time—that prior to May 2004 transfer, he had legal work come up "missing" after previous transfers and legal mail not being forwarded to his new facility. Plaintiff has not provided the Court with any evidence supporting these allegations. Even if he had, however, Plaintiff's claim fails because these problems with his mail took place *before* his transfer and did *not follow from* the transfer, as is required by the Sixth Circuit in *Siggers-El*. That is, the lost mail was not a foreseeable consequence of the alleged retaliatory transfer at issue.

12

**SO ORDERED.**

                        S/Paul D. Borman
                        PAUL D. BORMAN
                        UNITED STATES DISTRICT JUDGE

Dated: April 30, 2009

## CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on April 30, 2009.

                        S/Denise Goodine
                        Case Manager